UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GAIL D.,[1]

        Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

        Defendant.

Case. No. 3:22-cv-01792-YY

OPINION AND ORDER

YOU, Magistrate Judge.

      Plaintiff Gail D. seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–33. This court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

      Plaintiff protectively filed an application for disability insurance benefits on August 14, 2019, alleging a disability onset date of July 31, 2017. Tr. 13. The Commissioner denied plaintiff's claim on February 6, 2020, and again upon reconsideration on July 16, 2021. *Id*. Plaintiff filed a written request for a hearing on August 2, 2021, and a hearing

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

was held before Administrative Law Judge Elizabeth Watson on December 10, 2021. Tr. 33–47. The ALJ issued a decision, finding plaintiff not disabled within the meaning of the Act. Tr. 13–25. The Appeals Council denied plaintiff's request for review on October 14, 2022. Tr. 1–6. Thus, the ALJ's decision is the Commissioner's final decision and subject to review by this court. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009–10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); *see also Lingenfelter*, 504 F.3d at 1035.

## SEQUENTIAL ANALYSIS AND ALJ FINDINGS

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential

2 – OPINION AND ORDER

inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999)).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged onset date of July 31, 2017. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: post-traumatic stress disorder (PTSD), anxiety disorder, depressive disorder, disorders of ligament, fascia and muscle, and lumbar spine stenosis. *Id*.

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could perform medium work as defined in 20 C.F.C. § 404.1567(c), except she is limited to frequent climbing of ramps or stairs and frequent climbing of ladders, ropes, or scaffolds, she is limited to frequent stooping, kneeling, crouching, and crawling, and she is limited to a work environment with few changes. Tr. 18.

At step four, the ALJ found plaintiff is unable to perform any past relevant work. Tr. 24.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including cleaner, industrial, packager, and laundry laborer. Tr. 25. Thus, the ALJ concluded plaintiff was not disabled at any time from July 31, 2017, through the date of the ALJ's decision on January 4, 2022. *Id.* at 14, 25.

3 – OPINION AND ORDER

DISCUSSION

Plaintiff argues that the ALJ (1) failed to give clear and convincing reasons to reject her subjective symptom testimony, and (2) failed to properly account for her mental health conditions in the RFC. Pl.'s Br. 6, ECF No. 18.

I.  **Subjective Symptom Testimony**

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms alleged, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). The ALJ need not "perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). But Ninth Circuit law "plainly requires" that an ALJ do more than "offer[ ] non-specific conclusions that [the claimant's] testimony [is] inconsistent with [certain evidence]." *Id.* (citations omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

In evaluating a claimant's subjective symptom testimony, an ALJ may consider whether it is consistent with objective medical evidence. 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3); SSR 16-3p, *available at* 2017 WL 5180304, at *7-8. The lack of objective medical evidence may not form the sole basis for discounting a claimant's testimony. *Tammy S. v. Comm'r Soc. Sec. Admin.*, No. 6:17-cv-01562-HZ, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.")). However, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original).

Effective March 28, 2016, the Commissioner superseded Social Security Ruling ("SSR") 96-7p, governing the assessment of a claimant's "credibility," and replaced it with SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Plaintiff claims that she experiences anxiety and PTSD symptoms stemming from a past workplace accident where a semi-truck backed through a window and into plaintiff's

5 – OPINION AND ORDER

office, pinning her against the wall. Pl.'s Br. 2, ECF 18. Plaintiff testified that "anything" can set off her panic attacks, which she takes "emergency pills" for, and that she suffers from sweating, headaches, and nightmares. Tr. 41. The ALJ acknowledged each of these symptoms, and found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [plaintiff]'s statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . ." Tr. 19. The ALJ provided three distinct rationales for discounting plaintiff's symptom testimony. First, the ALJ noted that the symptoms were inconsistent with the objective medical evidence; next, the ALJ found plaintiff's complaints were inconsistent with plaintiff's conservative course of treatment; and finally, the ALJ determined that plaintiff's symptom complaints conflicted with her daily activities. Tr. 19–21. Plaintiff assigns error to each rationale.

    A.    **Inconsistency with Objective Medical Evidence**

As a threshold matter, the ALJ acknowledged that plaintiff complained of a wide range of signs and symptoms, including:

> [H]er poor ability to do math frustrates her, as does her inability to sit for a full hour. She states she has headaches. She has some vision problems and has to use three different types of glasses. She experiences anxiety and has emergency pills for panic attacks. She can be triggered by anything, like inability to find her car keys or accidentally turning off her security camera. She feels confused. She sweats, gets a headache, has nightmares. She found that returned to the warehouse caused too much anxiety. She has a hard time driving and does not like being around people. She has trouble balancing her checkbook.

Tr. 19 (internal citations omitted). However, the ALJ noted that throughout the period since plaintiff's alleged onset date, her mini-mental status examinations were normal. Tr. 20 (citing Tr. 1986). The ALJ also observed that despite plaintiff's complaints,

6 – OPINION AND ORDER

> her 2018 neuropsychological testing was negative. Her WAIS-IV testing showed superior range of intellectual ability. Her cognitive testing otherwise returned results within normal limits, her brain MRI showed only normal age-related changes, and she was advised that her symptoms are most likely PTSD-related and it may be best for her to find a new occupation . . . Following a negative 2018 work-up with negative MRI and examination findings, the [plaintiff]'s examining doctor advised that her symptoms are most likely PTSD-related and "it may be best for her to find a new occupation." In 2019, the claimant's care provider noted that PTSD and anxiety are the primary cause of symptoms and intermittent headaches, and they are improving. Dr. Columb advised that, "I definitely think you should be ready to try going back to work."

Tr. 20 (citing Tr. 1609–10, 1786–88, 1753, 1787). The chart notes cited by the ALJ support the ALJ's conclusion, namely, that "the evidence supports the conclusion that [plaintiff]'s PTSD, anxiety, and depression result in limitations to work environments with few changes." Tr. 21.

Plaintiff argues that the mini-mental status exam findings are not revealing because they were not taken during one of her panic attacks, about which she primarily complains. Pl.'s Br. 9, ECF 18. However, it was reasonable for the ALJ to conclude that plaintiff's ability to sufficiently manage her symptoms during these exams undermined her allegations of completely disabling symptoms, such as when plaintiff's husband startles her or her inability to leave her home. Tr. 39–40. "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." *Trevizo v. Berryhill*, 871 F.3d 664, 674–75 (citing *Orn v. Astrue*, 495 F.3d at 625, 630 (9th Cir. 2007)). Accordingly, the ALJ's first rationale for discrediting plaintiff's symptom allegations—that they were inconsistent with the objective medical evidence—meets the clear-and-convincing threshold.

### B. Conservative Treatment

The ALJ also discredited plaintiff's symptoms because her pattern of counseling and

7 – OPINION AND ORDER

"constancy" of her mental health medication management regime suggest her symptoms were adequately managed. Tr. 20. An ALJ may properly consider conservative treatment as a basis for discounting a claimant's testimony regarding the severity of symptoms. *Parra*, 481 F.3d at 751.

The ALJ observed that plaintiff attended mental health counseling infrequently and treatment records were minimal. Tr. 20. The ALJ noted that plaintiff's pattern for attending counseling seemed to occur when there was a "new stressor," but she "adjusted to each of these changes in well under 12 months." *Id.* The minimal treatment notes in the record corroborate the ALJ's findings. At one point, plaintiff did not return to counseling until "after a year + away." Tr. 2003. The records also indicate plaintiff actively used the methods that she had been taught to combat her anxiety and fight-or-flight responses. Tr. 1998–2003; *see also* Tr. 693 (plaintiff reported that seeing her psychologist "is helping significantly"). Moreover, as the ALJ noted, plaintiff's treatment providers repeatedly discussed plaintiff's eventual return to work. Tr. 22; *see* Tr. 1140 ("We want to get you back to work but it may be in a different role."), 1197 ("we should be able to release you to work as tolerated), 1434, 1599 ("After this appointment, she should be able to return to work without restrictions if the neurologist agrees."), 1604 ("Assuming the neurologist does not think anything [sic] is still related to the concussion. we should he able to release you to work as tolerated."), 1605 ("I will see her back in 4 weeks and anticipate that she should be ready to return to work at that point."), 1610 ("Once we have the neurology input, I definitely think you should be ready to try going back to work.").

The ALJ further observed that plaintiff's mental health medication over the relevant period adequately managed symptoms with modest variations over time. Tr. 20. As the

8 – OPINION AND ORDER

ALJ noted, plaintiff was consistently taking Cymbalta, and the record shows that Cymbalta helped reduce plaintiff's panic attacks and improved her mood.  *See* Tr. 371, 698, 776 ("Cymbalta is definitely helping with her mood. Not crying anymore and feeling less anxious in general.").  "Impairments that can be controlled effectively with medication are not disabling." *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted).

Plaintiff argues the ALJ erred by picking out a few isolated instances of improvement and treating them as a basis to conclude she is capable of working.  Pl.'s Br. 9, ECF 18.  However, the ALJ reasonably concluded that the frequency and extent of plaintiff's treatment did not comport with the severity of the symptoms alleged.  The ALJ's second rationale meets the exacting clear-and-convincing legal standard.

**C.    Activities of Daily Living**

The ALJ additionally discounted plaintiff's symptom testimony based on purported conflicts with her daily activities.  It is unnecessary to reach this issue, as the ALJ otherwise cited at least one specific, clear and convincing reason to discount plaintiff's subjective symptom testimony.

**II.    Mental Limitations and RFC**

Plaintiff also contends the ALJ failed to properly account for her mental limitations in the RFC.  Plaintiff notes the ALJ recognized that her PTSD, anxiety disorder, and depressive disorder are severe impairments, but the only non-exertional limitation included in the RFC is a limitation to "a work environment with few changes." Pl. Br. 13, ECF 18.  Plaintiff observes that the ALJ "accepted" the state agency psychologist evaluations that her "lingering startle response would limit her ability to adapt to typical workplace stressors," but found only that "the meaning of 'stressors' is clarified to workplace changes."  Pl. Br.

9 – OPINION AND ORDER

13, ECF 18 (citing Tr. 21). Plaintiff faults that ALJ for "failing to address [her] other limitations related to severe mental health impairments," and argues the "RFC does not accurately reflect the full scope of limitations that [she] would need in order to accommodate her mental health impairments." *Id.*

Plaintiff's argument overlooks the totality of the state agency consultants' opinions. The state agency consultants found that plaintiff is moderately limited in her ability to respond appropriately to changes in the work setting. Tr. 65, 76. They also found that plaintiff is able to following directions and interact with others and sustain concentration, but her "lingering startle response would limit [her] ability to adapt to typical workplace stressors." From this, the ALJ reasonably concluded that typical workplace stressors meant workplace changes. Moreover, to the extent there was any ambiguity, the ALJ is "responsible for . . . resolving ambiguities." *Ford*, 950 F.3d at 1149.

Plaintiff also contends the ALJ failed to include any limitations to account for her mental health symptoms, including unscheduled breaks for panic attacks and associated symptoms, and her inability to be around and work with groups of people. Plaintiff asserts it is contradictory for the ALJ to recognize her mental health impairments as "severe," but fail to accommodate for such a finding in the RFC. Pl.'s Br. 14, ECF 18.

The ALJ was required to "assess the nature and extent of [plaintiff's] mental limitations and restrictions" and whether they "reduce [her] ability to do past work and other work." 20 C.F.R. § 404.1545(c). The ALJ considered plaintiff's mental health records and assessed her mental functioning in four broad areas known as the "paragraph B" criteria. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00.A.2.b. The ALJ found that plaintiff had "mild limitation[s]" in three of the criteria—"understanding, remembering, or applying

information," "interacting with others," and "concentrating, persisting, or maintaining pace." The ALJ found that plaintiff had "moderate limitation[s]" in the fourth criteria for "adapting or managing oneself." The ALJ's assessment of plaintiff's residual functional capacity reflected these limitations.

Plaintiff contends the ALJ should have created a limitation in the RFC regarding her inability to be around people. *Id.* However, as stated above, the ALJ found plaintiff had only a mild limitation in interacting with others:

> In interacting with others, the [plaintiff] has a mild limitation. The [plaintiff] states that they do not have problems getting along with family, friends, neighbors, or others, and have never lost a job due to difficulty getting along with someone else. They report that they spend time with friends at the pub regularly. Mental status examinations sometimes show dysthymic affect, but generally normal affect and normal ability to express [her]self. These factors suggest no more than mild limitation in this domain.

Tr. 17. (internal citations omitted). It was reasonable for the ALJ to conclude more restrictions were unnecessary. In sum, the ALJ reasonably evaluated the medical record alongside plaintiff's subjective symptom testimony and created a sufficient RFC to accommodate for plaintiff's mental limitations.

## ORDER

The Commissioner's decision is AFFIRMED.

DATED January 2, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

11 – OPINION AND ORDER